UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHOW ME STATE PREMIUM HOMES,           )<br>                                                                    )<br>            Plaintiff,                                     )<br>                                                                    )<br>      v.                                                          )<br>                                                                    )     Case No. 4:21-CV-00379 SEP<br>                                                                    )<br>UNITED STATES OF AMERICA, on behalf )<br>of DEPARTMENT OF HOUSING AND       )<br>URBAN DEVELOPMENT, et al.,              )<br>                                                                    )<br>                                                                    )<br>            Defendants.                               )| |

**MEMORANDUM AND ORDER**

Before the Court is Defendant United States of America's Motion to Dismiss. Doc. [12]. For the reasons set forth below, the motion is granted. Furthermore, because there is no longer any basis for original federal jurisdiction upon the dismissal of the United States as a party, the Court will remand the action to the Circuit Court of St. Louis County, Missouri.

**I.     FACTS AND BACKGROUND**

This action involves rights to property located at 60 Alpha Drive in Florissant, Missouri, (the Property) on which the United States Department of Housing and Urban Development (HUD) holds a mortgage lien securing a loan with an original principal balance of $185,250.00. Doc. [4] at 5. Defendants George and Doris McDonnell bought the Property at issue in 1959. *Id*. In February of 2005, the McDonnells took out a home equity loan with Wells Fargo for $185,250.00. *Id*. Also in February of 2005, the McDonnells took out a second home equity loan with HUD. *Id*. at 6. Both Deeds of Trust evidencing the indebtedness were recorded with the St. Louis Recorder of Deeds on February 28, 2005. *Id*. In 2015, Wells Fargo assigned the First Deed of Trust to HUD. *Id*. The McDonnells fell behind on their real estate taxes, and in August 2019, pursuant to Chapter 140 of Missouri's Revised Statutes (commonly referred to as the Jones-Munger Act), the Collector of Revenue for St. Louis County, Missouri, sold the property at public auction to Missouri Bond Company, LLC, in order to foreclose the County's lien for delinquent taxes in the amount of $9,304.00. *Id*. at 6-7. In November of 2020, the St. Louis

1

County Collector of Revenue issued a Collector's Deed conveying the Property to Missouri Bond Company. *Id*. at 7. On November 12, 2020, Missouri Bond Company conveyed the Property to Plaintiff Show Me State by Quit Claim Deed, which was recorded in the St. Louis County Land Records on December 23, 2020. *Id*. Plaintiff alleges that the foreclosure of the State of Missouri's lien for delinquent taxes at the tax sale in August 2019, and "the failure of Defendants[1] to redeem their interests in the Property in a timely manner extinguished the interests of Defendants in the Property," including HUD's mortgage lien. *Id*.

Plaintiff initiated this lawsuit in the Circuit Court of St. Louis County, Missouri, on January 22, 2021, pursuant to MO. REV. STAT. §§ 140.330 and 140.580. Doc. [4]. The United States timely removed the action to this Court pursuant to 28 U.S.C. §§ 1446(a) and 1442(a)(1) on March 30, 2021. Doc. [1]. In Count I of its petition, which Plaintiff entitles "Quiet Title; Tax Sale Confirmation; and Declaratory Judgment," Plaintiff seeks a judgment against all Defendants, including the Government, asserting that, "[t]he interests of the Defendants in the Property described above were extinguished by the foreclosure of the State of Missouri's lien for the payment of real estate taxes through the first offering tax sale of real estate on the fourth Monday in August 2019, and the failure of Defendants to redeem their interest in the Property in a timely manner." Doc. [4] at 8. Additionally in Count I, Plaintiff asks the Court to award it "costs and such other relief as is meet and just." *Id*. In Count II, entitled "Ejectment," Plaintiff "demand[s]" possession of the Property against all Defendants, and states that "[a]s a result of said denial of possession, Plaintiff may suffer damages, including, without limitation, costs of holding title to the Property and loss of use of the Property." *Id*. at 9. Plaintiff asks for "reasonable damages to compensate for the damages suffered," as well as "costs and such other relief as is meet and just." *Id*. at 10.

The United States moves to dismiss it as a party pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff's claims are barred in part by the doctrine of sovereign immunity. Defendant United States also asserts that the remaining claims against it must be dismissed pursuant to Rule 12(b)(6) because federal law prohibits a locality from extinguishing the property interests of the United States by a nonjudicial tax sale.

---

[1] In addition to the United States on behalf of HUD, Plaintiff also names as Defendants all persons or entities who claim any interest in the Property, including George McDonnell, Doris McDonnell, Kratky Road, Inc., Alan South, National City Bank, PNC Financial Services Group, Inc., Metropolitan St. Louis Sewer District, and the City of Florissant, Missouri.

Saint Louis County, Missouri, joined the litigation as an Intervenor on October 26, 2021, (Doc. [40]), and joins in Plaintiff's arguments with respect to Count I but takes no position on Count II. The Court heard argument from Plaintiff, the United States, and Intervenor on November 8, 2021. See Doc. [44].

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure Rule 12(b)(6), courts shall not dismiss any complaint that states a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when the pleaded facts allow the Court to reasonably infer that the defendant is liable. *Iqbal*, 556 U.S. at 678. The Court views all facts in the light most favorable to the nonmoving party. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2008). Dismissal is appropriate for state claims that are preempted by federal laws. *See, e.g.*, *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144-45 (8th Cir. 2015) (affirming dismissal of state claims preempted by the Copyright Act).

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action based on lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate when subject matter jurisdiction is successfully challenged on the face of the complaint or on the facts. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Where, as here, the attack is a facial one, the non-moving party receives the same protections as under a Rule 12(b)(6) motion to dismiss. *Osborn v. United States*, 918 F.2d 724 at n.6 (8th Cir. 1990). To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

## III.  DISCUSSION

### A. Sovereign immunity bars portions of Count I and all of Count II.

Under the doctrine of sovereign immunity, the United States cannot be sued without its consent. Accordingly, the United States is not subject to suit unless it has expressly waived its immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The burden of showing a waiver of sovereign immunity lies squarely with the plaintiff. *Wright v. Langdeau*, 158 F. Supp. 3d 825, 831 (D.S.D. 2016). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990). Any such

3

waiver "will be strictly construed, in terms of scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 197 (1996).

Plaintiff, in its petition, did not cite to any statute as a basis for HUD's waiver of immunity from suit in this action. The Court notes that 28 U.S.C. § 2410(a)(1) provides the only apparent basis for finding a waiver of sovereign immunity in this case.[2] The United States concedes that it has waived immunity to suit under § 2410, to the extent that Plaintiff attempts to brings an action to quiet title. But the Government argues that it has not waived sovereign immunity to the extent that Plaintiff seeks "confirmation" of the tax sale, nor for monetary damages in Count I or for Plaintiff's claim for ejectment and damages in Count II. According to the United States, then, the Court must dismiss Count I, to the extent that Plaintiff seeks "costs" or "confirmation" of the tax sale, and Count II in its entirety, for lack of subject matter jurisdiction under Rule 12(b)(1). The Court agrees.

The Eighth Circuit has held that a claim for damages may not be construed as a quiet title action, and therefore does not fall within the waiver of sovereign immunity for quiet title actions pursuant to 28 U.S.C. § 2410(a)(1). *See Murray v. United States*, 686 F.2d 1320, 1326 (8th Cir. 1982); *see also Ringer v. Basile*, 645 F. Supp. 1517, 1526 (D. Colo. 1986) (citing *Murray,* 686 F.2d at 1326) ("Although the statute allows for a quiet title action to proceed because of the statutory waiver of sovereign immunity, damage actions cannot be construed as quiet title actions."). Therefore, insofar as Plaintiff's claim for relief in Count I is for money damages and

---

[2] In relevant part, 28 U.S.C. § 2410 provides:

> § 2410. Actions affecting property on which United States has lien
>
> (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
>
> (1) to quiet title to,
>
> . . . . .
>
> real or personal property on which the United States has or claims a mortgage or other lien.
>
> . . . .
>
> (c) A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court situated. However, an action to foreclose a mortgage or other lien, naming the United States as a party under this section, must seek judicial sale.

not to quiet title, the claim must be dismissed because the United States has not waived sovereign immunity for monetary damage claims. As to Plaintiff's request that this Court "confirm[ ]" the tax sale, Plaintiff has failed to identify a waiver of sovereign immunity that would permit suits seeking such confirmation, and the Court's own research has found no such statutory waiver. Therefore, that claim must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).[3]

Courts have also held that Congress did not allow for ejectment actions under § 2410. "Because Congress chose to waive sovereign immunity only as to actions in quiet title and not as to ejectment actions . . . pursuant to 28 U.S.C. § 2410(a)(1)," the Court does not have subject matter jurisdiction over Plaintiff's claim for ejectment in Count II.[4] *Bank of New York Mellon v. Ashley*, 2018 WL 1521872, at \*6 (D. Md. Mar. 28, 2018).

Plaintiff has not met its burden of establishing that subject matter jurisdiction exists as to any cause of action except its quiet title action. Thus, Count I is dismissed to the extent Plaintiff seeks monetary damages and costs or "confirmation" of the tax sale, and Count II for ejectment is likewise dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B. Plaintiff's quiet title suit must be dismissed for failure to satisfy 18 U.S.C. § 2410(c)'s judicial sale requirement.

The United States argues that this Court should dismiss the remaining claim against the United State in Count I—which seeks to foreclose a lien in favor of the United States on the Property and quiet title in favor of Plaintiff—pursuant to Federal Rule of Procedure 12(b)(6). The United States points to 28 U.S.C. § 2410(c), which states that any action to foreclose a lien in favor of the United States "must seek judicial sale." The United States asserts that the municipal tax sale procedure utilized by the County under the Jones-Munger Act is not a "judicial sale" and thus may not work to extinguish a federal lien. Because the federal statute

---

[3] To the extent that a request to "confirm[ ]" a tax sale may be construed as a species of quiet title claim, the requested relief must be denied for the reasons stated *infra* with respect to Plaintiff's quiet title claim.

[4] Plaintiff also represents that if HUD does not claim any right to possession of the Property, then Plaintiff does not wish to maintain Count II. Doc. [18] at 3. The Government responds that, as a lienholder, it does not claim to be in "possession" of the Property, nor does it claim a right to possession, Doc. [32] at 4, so Count II may be dismissed on that basis as well.

5

conflicts with, and therefore preempts,[5] Missouri law, the United States argues, the tax sale held under the Jones-Munger Act did not extinguish its lien on the Property.[6]

Plaintiff acknowledges that an action to foreclose a lien in favor of the United States must seek a "judicial sale" under § 2410(c) but argues that the instant litigation satisfies that requirement. *See* Doc. [18] at 5. Plaintiff maintains that this Court's ratification of the tax sale undertaken pursuant to the Jones-Munger Act would suffice to transform the tax sale into the "judicial sale" required under § 2410(c). In other words, Plaintiff argues that the tax sale of the Property is not effective until this Court ratifies it, and such ratification would be judicial in nature, thus satisfying § 2410(c). Plaintiff alternatively argues that the tax sale procedure under the Jones-Munger Act could be construed as a "judicial sale" because lienholders receive notice and an opportunity to redeem their interest.

### 1. *Tax sale procedure under the Jones-Munger Act*

Under the Jones-Munger Act, any real estate that has outstanding unpaid taxes from the prior year remaining due in January is considered delinquent, and the County Collector may then enforce the tax lien on such property. *See* MO. REV. STAT. § 140.010. After providing notice to the recorded owner of the property, the Collector must publish notice of the sale in a newspaper of general circulation for three consecutive weeks before any tax sale may occur. *Id*. at § 140.170.1. The Missouri Supreme Court has described the remainder of the tax sale procedure as follows:

> Chapter 140 [the Jones-Munger Act] provides that the County Collector conduct an annual sale each August of real property on which tax payments have been delinquent. It also provides for three successive tax offerings. If, at the first offering, no one bids a sum equal to the delinquent taxes on a property, with interest, penalties, and costs, the County Collector holds a second offering the following August. If there are no adequate bids submitted at the second offering, a third offering is made the following August, and at the third offering, the property is sold to the highest bidder. A tax sale at a first and second offering is followed by a one-year redemption period during which the owner, occupant, or any other

---

[5] Under the Supremacy Clause of the United States Constitution, federal law that is validly adopted and within the constitutional power of the federal government is the supreme law of the land and supersedes any conflicting state law. U.S. Const. Art. VI, § 2; *see also M'Culloch v. State*, 17 U.S. 316 (1819). As a result, any state law that conflicts with federal law has no effect. *See Lefaivre v. KV Pharm Co.,* 636 F.3d 935, 938 (8th Cir. 2011).

[6] To be clear, the United States is not arguing that the entirety of Chapter 140 of the Missouri Revised Statutes is invalid or unconstitutional. Rather, it is arguing *only* that Chapter 140 is preempted as it applies to liens in favor of the United States.

6

> persons having an interest in the land or lot sold for taxes may redeem the real property by paying the purchase price plus the cost of the sale and interest to the County Collector. The purchaser at a first or second offering tax sale gets a certificate of purchase and does not acquire legal title until the redemption period has lapsed and said purchaser exercises the right to have legal title transferred. If the property is not redeemed during the one-year statutory redemption period, at the expiration thereof, and on production of certificate of purchase, the County Collector is required to execute to the purchaser a deed to the property that vests in the grantee an estate in fee simple absolute.

*Sneil, LLC v. Tybe Learning Ctr., Inc.,* 370 S.W.3d 562, 568 (Mo. 2012) (internal citations omitted).

Historically, "[b]efore the Jones-Munger Act, the lien for taxes was foreclosed by suit . . . [and] [i]f inferior lienholders were made parties to the suit, their liens were extinguished." *Eclipse Property Development LLC v. Ammari*, 635 S.W.3d 205, 217 (Mo. Ct. App. 2021) (citing *McMullin v. Carter*, 639 S.W.2d 815, 817 (Mo. banc 1982). The Jones-Munger Act "substituted an administrative proceeding for the judicial foreclosure and instead of being made parties to the suit, lienholders are notified by publication." *Id. See also Lohr v. Cobur Corp.,* 654 S.W.2d 883, 884-85 (Mo. 1983) (explaining that "[p]rior to January 1, 1970, such sales were accomplished by judicial proceedings," but "[s]ince January 1, 1970, the Collector of Revenue in St. Louis County has operated solely under the provisions of Chapter 140"). Under the Jones-Munger Act, "the proceedings preliminary to any sale of real property by the collector are administrative and nonjudicial." *Id.* "Generally, a delinquent tax sale extinguishes all other liens against the foreclosed property." *Eclipse Property Development LLC*, 635 S.W.3d at 217.

The Property at issue here was purchased at a first offering tax sale in August of 2019, by Missouri Bond Company. Doc. [4] at 7. Missouri Bond Company was issued a tax sale certificate of purchase at that time, and after neither the Property owners nor any of the lienholders redeemed their interests, legal title transferred to Missouri Bond Company and it was issued a Collector's Deed, which vested it with an absolute estate in fee simple. *Id. See also* Mo. Rev. Stat. § 140.405; *Brock v. Caldwell*, 358 S.W.3d 542, 544 (Mo. Ct. App. 2012) (After there is no redemption within the applicable period, "a purchaser may acquire a Collector's Deed vesting in the purchaser an absolute estate in fee simple."). Upon issuance of the Collector's Deed, according to Missouri law, all outstanding liens on the Property were purportedly extinguished, including HUD's. *See Eclipse Property Development LLC*, 635 S.W.3d at 217 (a delinquent tax sale extinguishes all other liens against the foreclosed property). On November

7

12, 2020, Missouri Bond Company conveyed the Property to Plaintiff Show Me State by Quit Claim Deed.  Doc. [4] at 7.

### 2. *The "judicial sale" requirement of 28 U.S.C. § 2410(c)*

Plaintiff does not dispute that a federal lien in favor of HUD may not be extinguished under 28 U.S.C. § 2410(c) except by "judicial sale," but it denies that any "sale" occurred before it filed this lawsuit.  Rather, Plaintiff asserts, this Court's ratification is required to effectuate the transfer of Property pursuant to the local tax sale, and such ratification would qualify as a "judicial sale" for purposes of § 2410(c).  There was no final sale prior to this action, Plaintiff reasons, because the Quit Claim Deed pursuant to which it took title to the Property is not as readily marketable as it would be after a successful action to quiet title.  *See* Doc. [49] at 71.[7]  Thus, its current interest in the Property is no more than an inchoate interest that could be ratified by the Court in this quiet title action, which would render its interest incontestable, at which time the sale of the Property will have been completed.  In the alternative, Plaintiff argues that the state procedure itself could qualify as a "judicial sale" for purposes of § 2410(c), because the lienholders were provided notice and given a chance to redeem their interest in the Property.  The Court will address each of Plaintiff's arguments in turn.

        a.   <u>The transfers of the Property from the County Collector to Missouri Bond Company and then to Plaintiff were "sales."</u>

Plaintiff's attempt to characterize the process by which it has acquired the property as something other than a "sale" strains credulity.  The process followed by St. Louis County is

---

[7] At the hearing on the Motion to Dismiss, the Court inquired of Plaintiff whether its quiet title action was an attempt to resolve "any ambiguities or concerns" it had about the title it already had, or whether it was to acquire marketable title.  Plaintiff's counsel indicated that it was not attempting to resolve ambiguities around its title, but rather was hoping to achieve more easily marketable title, due to the fact that title insurance underwriters are reluctant to insure marketable title based on a Collector's Deed.  A marketable title is one that "is free from reasonable doubt, but not from every doubt."  *Voorheesville Rod and Gun Club Inc. v. E.W. Tompkins Co. Inc*., 626 N.E.2d 917 (N.Y. 1993).  One common method a purchaser of property may take to protect against doubts that could cloud a title is through the purchase of title insurance.  Title insurance policies "typically provide that the insurer will indemnify the insured for loss or damage caused by defects in title or in lien priority that existed on the date of the policy, unless the defect is excluded from policy coverage . . . This model works because title insurance is retrospective rather than prospective; it generally protects against defects in title that arose *prior to* the issuance of the policy, allowing the insurer to reduce or eliminate risk by conducting a careful title search to identify defects."  *Captiva Lake Investments, LLC v. Fid. Natl. Title Ins. Co*., 883 F.3d 1038, 1043 (8th Cir. 2018) (internal citations omitted) (cleaned up).

described throughout the Jones-Munger Act as a "sale," without qualification. *See, e.g.*, Mo. Rev. Stat. § 140.150 ("All lands . . . on which taxes or special assessments are delinquent and unpaid are subject to *sale* to discharge the lien…") (emphasis added); *id.* § 140.170 ("the county collector shall cause a copy of the list of delinquent lands and lots to be printed in some newspaper of general circulation published in the county for three consecutive weeks, one insertion weekly, before the *sale* . . .") (emphasis added). Nowhere does that statute suggest that such a sale is incomplete, or that it requires further action to be consummated. Granted, Jones-Munger does not define "sale," but when a statutory term is undefined, courts look to its ordinary meaning. *See Taniguchi v. Kan Pac. Saipan,* Ltd., 566 U.S. 560, 566 (2012). At the time of Jones-Munger's enactment, the ordinary meaning of "sale" was the transfer of property for a price. *See, e.g.*, *Sale*, Websters Second New International Dictionary (1934) (a "sale" occurs when "property is transferred from one person to another for a price"); *Sale*, Black's Law Dictionary (3d ed. 1933) (in the legal context, "sale" is defined as "[a] contract between two parties" by which the seller "in consideration of the payment or promise of payment of a certain price in money, transfers to the [buyer] the title" to property).

In this case, the Property was transferred from St. Louis County to Missouri Bond Company in exchange for payment, and Missouri Bond Company received a Collector's Deed to the Property after expiration of the applicable redemption period. The Property was again transferred for a price in 2020, when Missouri Bond Company transferred the Property to Plaintiff by Quit Claim Deed in exchange for consideration. Both of those transactions were paradigmatic "sales" in the ordinary sense of that term. Furthermore, there is nothing (except Plaintiff's argument) to suggest that the tax sale transferred only an inchoate interest in the Property. As explained above, legal title transferred to Missouri Bond Company after the initial tax sale, and it was issued a Collector's Deed, which vested it with an absolute estate in fee simple pursuant to Mo. Rev. Stat. § 140.405. Subsequently, on November 12, 2020, Missouri Bond Company sold the Property to Plaintiff Show Me State by Quit Claim Deed. Doc. [4] at 7. The fact that title to the Property has already changed hands once since the tax sale undermines Plaintiff's argument that its interest is "inchoate" because the title is unmarketable unless the tax sale is ratified by this Court. The fact that title could be rendered more marketable upon a successful quiet title action does not negate the fact that Plaintiff has held a marketable deed on the Property since 2020. Thus, the Court concludes that the conveyance of the Property to

Missouri Bond Company by tax sale and then to Plaintiff by Quit Claim Deed were indeed "sales," as that term is ordinarily understood. Plaintiff's argument to the contrary fails.

> b. The tax sale conducted by St. Louis County was not a "judicial sale" as required by 28 U.S.C. § 2410(c).

The question before the Court, then, is whether the tax sale conducted by St. Louis County was a "judicial sale" capable of extinguishing HUD's lien under § 2410(c). The legislation enacting the "judicial sale" requirement did not contain any definition of "judicial sale," and neither did the statutory section it modified. *See* Federal Tax Lien Act of 1966, Public Law 89-719, 80 Stat. 1125 at 1147-48 (Nov. 2, 1966). Therefore, to answer the question, the Court must determine how the term "judicial sale" was understood when Congress added that requirement to the statute in 1966. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 491 (2020) ("Without a statutory definition, we turn to the phrase's plain meaning at the time of enactment.").

Although "judicial sale" is not a phrase that appears in dictionaries of general usage, at the time of the enactment of the Federal Tax Lien Act of 1966, Black's Law Dictionary defined "judicial sale" as: "One made ***under the process of a court having competent authority to order it***, by an officer duly appointed and commissioned to sell, as distinguished from a sale by an owner in virtue of his right of property." *Judicial Sale*, Black's Law Dictionary (4th ed. 1951) (emphasis added).[8]

Looking to the broader statutory context of the provision, one finds that, while Title 28 contains no definition of "judicial sale," it does include a chapter entitled "Executions and Judicial Sales," which prescribes procedures for judicial sales in federal courts. *See* 28 U.S.C. §§ 2001, 2002, 2004; *see, e.g.*, *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071 (2018) (looking to the "broader statutory context" for confirmation of the ordinary meaning of a term at the time of a statute's enactment). The chapter governing judicial sales was enacted in 1948—18 years prior to Congress's enactment of the provision at issue in this case. *See* Public Law 80-773, Chap. 646, 62 Stat. 869 at 958-59 (June 25, 1948). Thus, the Court may assume that the lawmakers who added the term "judicial sale" to § 2410(c) in 1966 were aware of it. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."). And that chapter provides, in relevant part:

---

[8] The next edition, published only two years after the enactment of the relevant statutory text, included the same definition. *See Judicial Sale*, Black's Law Dictionary (rev. 4th ed. 1968).

10

> **(a)** Any realty or interest therein *sold under any order or decree of any court of the United States* shall be sold as a whole or in separate parcels *at public sale at the courthouse* of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, *as the court directs. Such sale shall be upon such terms and conditions as the court directs* . . .

28 U.S.C. § 2001 (emphases added).[9]

Of course, as a trial court, this Court does not interpret statutory terms on a blank slate. Case law does not appear to provide an authoritative definition of the term "judicial sale" as it is used in 28 U.S.C. § 2410(c). *See A.H. & R.S. Coal Corp. v. United States,* 461 F. Supp. 752, 755 (W.D. Pa. 1978) (internal quotations omitted) ("What may accurately be denominated as a judicial sale is not very well settled . . . ."). But both the Supreme Court and Eighth Circuit have described characteristics of "judicial sales" more generally, and other courts have similarly identified indicia that make a sale a "judicial sale." *See id.* ("a judicial sale must have certain basic ingredients").

Long before the enactment of the provision at issue in this case, the Supreme Court observed that, "[b]y judicial sale is meant one *made under the process of a court*, having competent *authority to order it*." *Williamson v. Berry*, 49 U.S. 495, 496 (1850) (emphasis added); *see also Blossom v. Milwaukee & C.R. Co.*, 70 U.S. 196, 207 (1865) (Judicial sales are "made under the *decretal orders of courts* . . . and are always regarded as *under the control of the court*.") (emphasis added). More recently, the Supreme Court has distinguished between what it called a "*judicial* foreclosure" and a "*nonjudicial* foreclosure" in that the former is a "legal action initiated by a creditor in which *a court supervises* sale of the property and distribution of the proceeds," and in the latter "notice to the parties and sale of the property occur outside court supervision." *Obduskey v. McCarthy & Holthus*, 139 S.Ct. 1029, 1034 (2019) (emphasis added). And the Eighth Circuit has said of "judicial sales" that "[i]t is an *indispensable attribute* of such a sale that it must be *made by authority of some court or judge that has jurisdiction to make or direct* it." *Laurel Oil & Gas Co. v. Galbreath Oil & Gas Co.*, 165 F. 162, 165 (8th Cir. 1908) (emphasis added).

---

[9] Section 2002 provides for notice of any public sale pursuant to a court order for at least four weeks prior to the sale in at least one newspaper of general circulation where the realty is situated. 28 U.S.C. § 2002. And Section 2004 provides that Section 2001's procedures should apply to any "personalty sold under any order or decree of any court of the United States . . . ." *Id.* § 2004.

11

Other courts have made similar statements about the nature of judicial sales. To be classified as a "judicial sale," the sale "must be *directed by judicial order, decree or judgment*." *Brightwell v. United States*, 805 F. Supp 1464, 1469 (S.D. Ind. 1992) (emphasis added). "Where a court did not *specifically order the sale* of property in a judgment, the sale is not a judicial sale." *Midway-Fin. Corp., Ltd. v. Walters*, 1991 WL 191248, at *4 (D. Haw. July 5, 1991), *aff'd*, 980 F.2d 737 (9th Cir. 1992) (emphasis added). "A judicial sale is a *court-supervised* sale of foreclosed property in which the proceeds are used to satisfy lienholders." *Kona Properties, LLC v. U.S.,* 2009 WL 2366561, at *2 (D. Md. July 30, 2009) (emphasis added). "Generally, a prior *judgment, decree, or order, entered in a judicial proceeding* and directing that specific property be sold is the foundation of a judicial sale, and there can be no valid judicial sale without *an order or decree directing it*, entered by a court having the power to decree the sale after jurisdictional requisites for such sale have been met." *Kasdon v. G. W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 996 (D. Md. 1982), *aff'd sub nom. Kasdon v. U.S.*, 707 F.2d 820 (4th Cir. 1983) (emphasis added); *see also In Re La France Copper Co.*, 205 F. 207 (D.C. Mont. 1913) (A judicial sale is one made "pursuant to some *order or decree creating or declaring a right to sell*, and which right would not be exercised but for the order or decree.") (emphasis added).

Although no single one of the foregoing authorities squarely dictates the outcome of this case, it is not lost on the Court that nothing in any of them supports Plaintiff's theory. Common to all of the definitions of "judicial sale" located by this Court is the requirement that the sale be conducted pursuant to court order or under court supervision. Here, pursuant to the Jones-Munger Act, the St. Louis County tax sale was an online auction conducted by the County with no court oversight or intervention; it was not held pursuant to a court order or decree; and it was accomplished without the approval of any court. Neither the terms, the timing, nor the method of the tax sale was ordered or approved by a court. Not one of the recognized indicia of judicial sales was present in the administrative procedure used in Missouri to conduct the tax sale at issue here. In short, based on all available sources authorities on the meaning of "judicial sale," the tax sale that took place in this case does not qualify.[10]

---

[10] Although the interpretation of "judicial sale" under § 2410(c) is a matter of federal law, *see Aqua Bar & Lounge, Inc. v. United States,* 539 F.2d 935, 938 (3d Cir. 1976), the Missouri courts' characterizations of the Jones-Munger tax sale process lend further support to this Court's conclusion. For example, the

12

Plaintiff also provides no authority for its theory of post-sale ratification, and several courts have rejected the theory. *See A.H. & R.S. Coal Corp.,* 461 F. Supp. at 755 (W.D. Pa. 1978) (citing *Baton Coal Co. Appeal*, 365 Pa. 519, 523, 76 A.2d 194, 196 (1950)) ("[A] court's ratification of a sale does not make the sale a judicial sale."); *see also Kasdon*, 541 F. Supp. at 996 (plaintiff argued that state tax sales were judicial sales for purposes of § 2410(c) because relevant state statute required post-sale ratification by the state court; federal court found such ratification of the sale by a court "does not make the sale a judicial sale"). The Court agrees with the other courts that have rejected the argument that this Court may convert a nonjudicial sale into a judicial sale by ratifying it after-the-fact.

This is the first time the United States has challenged the Missouri tax sale process. *See* Doc. [46] at 6. In fact, whether the judicial sale requirement of 28 U.S.C. § 2410(c) preempts the purported cancellation of a federal lien via a nonjudicial local tax sale appears to be an issue of first impression in the Eighth Circuit. But the federal government has challenged similar lien foreclosure procedures in other states, and federal courts hearing such claims have sustained the Government's challenges. For example, in *Kasdon v. G.W. Zierden Landscaping, Inc.,* 541 F. Supp. 991 (D. Md. 1982), the plaintiffs purchased real property at a tax sale conducted by county officials. *Id*. at 992. The plaintiffs then brought suit against the United States, among other defendants, to foreclose their interests in the property. *Id*. The plaintiffs argued that their lawsuit constituted an action for quiet title for which the United States had waived sovereign immunity pursuant to § 2410. *Id*. The court held that the state foreclosure proceedings by tax sale certificate holders were subject to the judicial sale requirements of § 2410(c). *Id.* at 996. Plaintiffs argued that the tax sales were judicial sales because the Maryland statute at issue required that the sales be ratified by a court in order to be final. *Id*. The federal district court disagreed, holding that "ratification of a sale . . . does not make the sale a judicial sale," and the Maryland tax sales were not judicial sales as defined in § 2410(c), and thus they did not work to strip the federal government of its interest. *Id*. at 996-7. The Fourth Circuit affirmed, agreeing

---

Missouri Supreme Court has explained that prior to the enactment of the Jones-Munger Act, tax sales were accomplished by judicial proceedings, whereas sales accomplished under Chapter 140 are "administrative and nonjudicial" in nature. *See, e.g.*, *Lohr*, 654 S.W.2d at 884–85; *see also Powell v. Cty. of St. Louis*, 559 S.W. 2d 189, 191 (Mo. banc 1977) (describing tax sales under Jones-Munger as "nonjudicial").

13

that because the "foreclosure sale was not directed by judicial order, it was not a judicial sale as contemplated by section 2410(c)." *Kasdon v. United States*, 707 F.2d 820, 823 (4th Cir. 1983).

Also analogous to this case is *BF Partners, LLC v. Estate of McSorley*, 2005 WL 1335150 at *5 (W.D. Mich. June 6, 2005), where the property at issue was subject to a lien in favor of the Governmental National Mortgage Association, which is administered by HUD. After the property owners fell delinquent on their taxes, a nonjudicial tax foreclosure sale occurred pursuant to applicable state law, and the court had to determine whether the tax sale could foreclose the federal lien. *Id*. at *1. The court held that "[t]o permit a state to foreclose upon federal property, stripping the federal government of their ownership by operation of a state law procedure, absent the consent of Congress, would be in direct contravention to the Supremacy Clause." *Id*. at *5. Similarly, in *Rust v. Johnson*, 597 F.2d 174 (9th Cir. 1979), the City of Los Angeles sought to enforce its right of nonjudicial foreclosure to dispose of property in which the federal government had an interest. The Ninth Circuit held that a mortgage interest retained by the Federal National Mortgage Association was a federal property interest, and that the city's attempt to foreclose on the property without seeking to protect the federal property interest was improper, as the Supremacy Clause barred the foreclosure sale. *Id*. at 179.

And several other courts have reached similar conclusions in analogous situations. *See, e.g., Collegium Fund, LLC v. Wells Fargo Bank, N.A.*, 2014 WL 4635608 at *3 (D. Nev. Sept. 15, 2014) ("HUD's protected, federal interest in the property cannot be extinguished by a nonjudicial foreclosure sale conducted . . . under state law."); *Guild Mortg. Co. v. Prestwick Court Trust*, 2017 WL 714343 at *6 (D. Nev. Feb. 22, 2017) (nonjudicial foreclosure could not extinguish a lien in favor of Federal Housing Administration); *Sec. of Hous. and Urb. Dev. v. Sky Meadow Assoc.*, 117 F. Supp. 2d 970, 981 (C.D. Cal. 2000) (where a nonjudicial foreclosure sale interferes with the government's financial interest the sale is void); *United States v. City of Newark*, 2009 WL 3230892 at *6 (D.N.J. Sept. 29, 2009) (A foreclosure sale of property owned by the Department of Veterans Affairs was invalid under the Supremacy Clause of the Constitution.).

The Court finds these authorities persuasive and agrees that a tax sale accomplished by procedures such as those used under the Jones-Munger Act is not a judicial sale for purposes of § 2410(c) and, accordingly, may not extinguish HUD's lien.

14

> c. The fact that lienholders received notice and an opportunity to redeem their interests did not make the tax sale a "judicial sale."

Finally, the Court must consider Plaintiff's alternative argument that the tax sale at issue here may be construed as a judicial sale because the lienholders received notice and an opportunity to redeem their interests in the Property. In support, Plaintiff cites *United States v. Brosnan*, 363 U.S. 237 (1960). At issue in *Brosnan* was whether federal liens on real properties were effectively extinguished by state proceedings to which the United States was not a party, and under state law, was not required to be a party. *Id.* at 238-39. The two proceedings under evaluation were a sale of property in California by a senior lienholder pursuant to a power of sale contained in the mortgage instrument and a sheriff's sale of Pennsylvania land pursuant to an *in personam* judgment against the mortgagor under a confession-of-judgment provision in the mortgage bond. *Id.* at 239. The Supreme Court noted that § 2410(a) states that "the United States *may* be named a party in any civil action or suit . . . to quiet title . . . to real or personal property," and held that the statute was merely permissive, and did not require that the United States receive notice or the other protections provided for under the statute, and thus the federal liens at issue were extinguished by the state tax sales. *Id.* at 247. Plaintiff argues that *Brosnan* supports the conclusion that a state tax sale may extinguish a federal lien under § 2410 so long as necessary state procedures were followed.

The United States counters that Plaintiff ignores the import of what happened after *Brosnan*. As forecast by the dissenting justices in *Brosnan*, the result was detrimental to the government's financial interest because it permitted divestiture of a federal lien without notice to the government. *Id.* at 259, (Clark, J. dissenting). Consequently, in response to *Brosnan*, Congress amended § 2410(c), adding the very requirement that has given rise to this lawsuit: "an action to foreclose a mortgage or other lien, naming the United States as a party under this section must seek judicial sale." *U.S. v. Capobianco*, 836 F.2d 808, 815 (3d Cir. 1988) (Congress amended § 2410 in reaction to *Brosnan*.).

Plaintiff acknowledges that Congress amended § 2410 in response to *Brosnan*, but cites portions of the *Capobianco* decision in support of its position. In *Capobianco*, the Third Circuit discussed *Brosnan* at length, exploring the reasons why Congress amended § 2410 in response to its holding. *Id.* at 814-17. Plaintiff directs the Court to one sentence in *Capobianco* in particular, which states that "Congress wished to prevent the discharge of federal tax liens by

15

operation of local law in circumstances where the government was not given notice or an opportunity to be heard." *Id*. at 817. Plaintiff contends that this supports the notion that Congress, in amending § 2410 to add the sentence requiring judicial sales, desired only to prevent the discharge of federal government liens by operation of local law in circumstances "where the government was not given (1) notice and (2) an opportunity to protect the government's interest." Doc. [18] at 6. Because the United States received notice and an opportunity to redeem its interest pursuant to the administrative procedure utilized under the Jones-Munger Act, Plaintiff contends that the judicial sale requirement of § 2410(c) has been satisfied here.

As the United States points out, Plaintiff's characterization of *Capobianco* is flawed. When the court in *Capobianco* stated that Congress "wished to prevent the discharge of federal tax liens . . . where the government was not given notice or an opportunity to protect its interests," the Third Circuit was not holding that the judicial sale requirement is satisfied *merely* by notice and an opportunity to protect federal interests. *Capobianco*, 836 F.2d at 817. Rather, the court was discussing, in dicta, why it believed Congress had amended § 2410(c) in 1966 to include the mandate for a "judicial sale." *Id.* A single line of speculation on congressional intent carries little weight with this Court when juxtaposed with the aforementioned wealth of consistent case law to the contrary.

In fact, moving beyond the words relied on by Plaintiff, *Capobianco* supports the Government's position. The *Capobianco* court went on to hold that the underlying procedure used in state court in Pennsylvania satisfied the § 2410(c) requirement for a "judicial sale" because there was a "[j]udgment . . . obtained in an action for mortgage foreclosure, a plenary proceeding in the Court of Common Pleas [of the Commonwealth of Pennsylvania], *preliminary* to a sale of the specific land described in the complaint." *Id*. (emphasis added). Thus, *Capobianco* supports the United States' motion by holding that a plenary proceeding in court, preliminary to a foreclosure sale, constituted a judicial sale under § 2410(c). Here, while the United States received notice and an opportunity to protect its interests, there was no plenary proceeding in a court prior to the tax sale, and the "judicial sale" required by § 2410(c) to foreclose a federal lien did not occur. Accordingly, Plaintiff's invocation of *Capobioanco* does not alter the Court's conclusion that the tax sale procedure utilized by St. Louis County did not

16

satisfy the judicial sale requirement of § 2410(c), and that HUD's lien was therefore not extinguished by the tax sale at issue in this case.

In light of all the foregoing, the Court concludes that Plaintiff's remaining claim against the United States in Count I must be dismissed pursuant to Rule 12(b)(6) because 28 U.S.C. § 2410(c) prohibits the extinguishment of property interests of the United States by a nonjudicial tax sale.

### C.  Remaining Claims Against Other Defendants

In its petition, Plaintiff brought Counts I and II against multiple other parties in Missouri who may have an interest in the Property.  Having concluded that the United States must be dismissed from the action with prejudice, the Court's original jurisdiction has been extinguished. Pursuant to 28 U.S.C. § 1367(c)(3), after a case has been removed to a federal court, the Court may, *sua sponte,* decline to exercise supplemental jurisdiction over pendent state-law claims if it has dismissed all claims over which it has original jurisdiction.  *Johnson v. City of Shorewood,* 360 F.3d 810, 819 (8th Cir. 2004).

As discussed above, all claims against the United States are dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1) and (6).  Thus, the Court has dismissed all claims over which it has original jurisdiction, satisfying the requirements of § 1367(c)(3).  In light of this, the Court declines to exercise supplemental jurisdiction over the state law claims against the remaining Defendants, and the case is hereby remanded to the Circuit Court of St. Louis County for further proceedings.

### IV.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant HUD's Motion to Dismiss it as a party in this litigation (Doc. [12]) is **GRANTED** with prejudice**.**

**IT IS FURTHER ORDERED** that the Court **DECLINES** to exercise supplemental jurisdiction over Counts I and II against the remaining Defendants.

**IT IS FURTHER ORDERED** that the action will be **REMANDED** to the Circuit Court of St. Louis County, Missouri.

**IT IS FINALLY ORDERED** that all remaining outstanding motions in this matter are **DENIED** as moot.  *See* Docs [19], [22].

17

An appropriate Order of Dismissal and Order of Remand will accompany this Memorandum and Order.

Dated this 31st day of March, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE